CARNES, Circuit Judge:
This trademark case concerns a dispute between two insurance companies over the right to'use the mark SUN LIFE. The plaintiffs are SunAmerica Corporation and its wholly-owned subsidiary, Sun Life Insurance Company of America (“Sun Life of America”) (collectively, “SunAmerica”). The defendants are Sun Life Assurance Company of Canada and its subsidiary, Sun Life Assurance Company of Canada (U.S.) (collectively, “Sun Life of Canada”). SunAmerica appeals from a judgment entered in favor of Sun Life of Canada on a counterclaim it brought against SunAmerica. The district court’s judgment permanently enjoined SunAmerica from further use of- any SUN LIFE mark.
Although Sun Life of Canada is the senior user of the SUN LIFE mark, it acquiesced in SunAmerica’s use of the mark. That acquiescence would estop Sun Life of Canada from asserting its counterclaim, were it not for the existence of “inevitable confusion” in .the marketplace. The existence of inevitable *1330 confusion operates to revive a senior user’s claim that is otherwise estopped by acquiescence. However, we hold in this opinion that where such revival occurs, the district court must consider the feasibility and efficacy of relief other than a complete injunction against the junior user. Because the district court’s order is ambiguous as to whether it adequately considered the feasibility and efficacy of alternative forms of relief, we remand the case for further proceedings.
I. BACKGROUND FACTS AND PROCEDURAL HISTORY
In June 1989, SunAmerica brought federal unfair competition and trademark infringement claims, and related state law claims, against Sun Life of Canada, alleging that Sun Life of Canada’s use of the marks SUN LIFE (U.S.) and SUN LIFE, without any reference to the geographic modifier “of Canada,” was causing unacceptable marketplace confusion. In response, Sun Life of Canada counterclaimed against SunAmerica for trademark infringement, seeking to enjoin SunAmerica from all use of the SUN LIFE mark. Both parties moved for summary judgment.
The district court found confusing similarity between the parties’ marks. In particular, the district court found that the mark SUN LIFE (U.S.) was likely to be confused with the mark SUN LIFE OF AMERICA. Accordingly, the district court permanently enjoined Sun Life of Canada from using the mark SUN LIFE (U.S.) without some form of the geographic modifier “of Canada.” Sun Life of Canada appealed.
On appeal, in a brief per curiam opinion, this Court held that the district court had erred by entering a permanent injunction without first resolving Sun Life of Canada’s counterclaim. We vacated the permanent injunction issued by the district court and remanded the case for consideration of that counterclaim. SunAmerica v. Sun Life Assurance Co., 24 U.S.P.Q.2d 1505, 1506, 974 F.2d 1348 (11th Cir.1992) (hereinafter “Sun-America I ”). In a concurring opinion, Judge Birch provided not only a thorough summary of the facts and procedural history of the case through that stage, but also a detailed analytical framework to guide the parties and the district court on remand. Id. at 1506-13, 974 F.2d 1348 (Birch, J., concurring). We adopt Judge Birch’s concurring opinion in its entirety as our statement of the facts and procedural history up through the time of the SunAmerica I decision. We also adopt as the law of the circuit his opinion’s pronouncements about the relevant law. Because Judge Birch’s concurring opinion in SunAmerica I has not previously been published in the Federal Reporter system, we attach that opinion and the per curiam opinion it accompanied, as an appendix to this opinion, infra pp. 1339-48.
On remand after SunAmerica I, the district court found that Sun Life of Canada had enforceable rights in its SUN LIFE marks and that a likelihood of confusion existed between the names SUN LIFE OF AMERICA and SUN LIFE OF CANADA. The district court also found, however, that Sun Life of Canada had acquiesced to SunAmeri-ca’s use of its allegedly infringing marks. Such acquiescence operates to estop a senior user’s trademark claim against a junior user’s use of the mark unless there is inevitable confusion between the marks. Coach House Restaurant v. Coach and Six Restaurants, 934 F.2d 1551, 1564 (11th Cir.1991). Applying that standard to the facts, the district court found that inevitable confusion existed between the parties’ names and that this inevitable confusion revived Sun Life of Canada’s trademark rights. Accordingly, the district court permanently enjoined SunAm-erica fi’om any further use of the SUN LIFE mark.[1]
SunAmerica filed motions to alter or amend the judgment, to stay the judgment pending appeal, and for a new trial. The district court denied these motions, and Sun-America filed with this Court an Emergency Motion to Stay Injunction Pending Appeal and to Expedite Appeal. We denied the motion to stay, but granted the motion to expedite the appeal. While the appeal was *1331 pending, SunAmerica complied with the injunction by changing the name of Sun Life of America to “SunAmerica Life Insurance Company.”
II. WHETHER THIS APPEAL SHOULD BE DISMISSED AS MOOT
A. THE ESTOPPEL ISSUE
In support of its motion to stay the injunction pending appeal, SunAmerica repeatedly represented to the district court that if it complied with the district court’s injunction by changing its name from Sun Life Insurance Company of America, it would be impossible, from both a commercial and regulatory standpoint, to later revert back to that name if SunAmerica prevailed on appeal. For example, SunAmerica’s senior vice-president and general counsel stated in an affidavit that once a name change had been implemented, the change would be “essentially irreversible” and that reverting back to the prior name would be “commercially impossible.” SunAmerica’s counsel made numerous representations to the district court to the effect that “[ejven if Sun Life of America were to prevail on appeal, it could not revert, either as a legal or practical matter, to its Sun Life of America name,” and that “to deny a stay is to effectively deny any appellate relief.” The district court rejected this argument and denied SunAmerica’s motion for a stay, finding that a name change could be reversed if SunAmerica prevailed on appeal.
Echoing its refrain from the district court, SunAmerica made repeated representations to this Court, in connection with its emergency motion to stay, that compliance with the district court’s injunction would “effectively moot and deny appellate rights and relief.” SunAmerica made no fewer than eight such representations in its Emergency Motion to Stay Injunction Pending Appeal and to Expedite Appeal, including, for example, the following statements:
(1)[Ijmplementing a name change is irreversible and would effectively moot Appellants’ right of appeal.
(2) [Ojnce [SunAmerica] begins to implement a name change, as a matter of commercial practicality it cannot reverse it. It will have lost ... its right to an appeal.
(3) [UJnless its initiation of the [compliance] process is stayed pending appeal, ... Sun Life of America’s right of appeal will be a nullity.
A panel of this Court nonetheless denied SunAmerica’s motion for a stay pending appeal, and SunAmerica has complied with the injunction by changing its name.
The vigor with which SunAmerica argued that the name change would moot this appeal is matched only by the vigor with which it now argues, having been forced to change its name, that the appeal is not moot after all. The same corporation and attorneys who unequivocally represented to the district court and this Court that a name change would be irreversible “as a matter of commercial practicality,” now just as unequivocally represent to this Court that the practical effects of the name change are, in fact, reversible. Such a sea change in factual representations prompted us to ask SunAmerica’s counsel at oral argument which of their statements were false: the ones they made while seeking a stay, or the ones they made after the stay was denied.
The essence of counsel’s response was that the representations were not really inconsistent because, even if it were commercially impractical for SunAmerica to “officially” revert back to its former name, relief from the injunction would permit SunAmerica to make other beneficial use of the SUN LIFE mark, such as using the mark in connection with a subsidiary created to market insurance products that the marketplace already associated with the Sun Life of America name. Therefore, reasoned counsel, the name change did not moot this appeal. Of course, SunAmeri-ca was careful to omit any mention of the possibility of subsidiary use of the mark when it was insisting that a name change would moot this appeal. SunAmerica’s representations to the district court and this Court that the name change would be irreversible and as a result its appeal would be moot necessarily carried with them a repre *1332 sentation that, absent a stay, no relief would be available to SunAmerica if it prevailed on appeal. Or, as SunAmerica put it, unless the name change was stayed its “right of appeal [would] be a nullity.”
Either an appeal is mooted by a particular event or it is not. Whether a particular event moots an appeal does not change depending upon whether a party wishes that event to occur. Here, SunAmerica made a clear factual representation, backed up with affidavits, that a name change would moot this case, but now unabashedly makes the opposite factual representation. Attorneys should not, in the guise of “effective advocacy,” make, or participate in making, factual representations to courts that are not true. If a party represents to the court that the opposite of what he previously has represented about a factual matter is true, he owes the court a satisfactory explanation for the contradictory representations. This is especially the case where, as here, the factual matters being represented (or misrepresented) are particularly within the knowledge of the parties whose attorneys are making the representations.
The type of tactics SunAmeriea’s counsel have employed in this case invite us to fashion a doctrine that would estop Sun-America from asserting at this stage of the appeal the opposite of what it had asserted earlier. In other words, we could hold that because SunAmerica repeatedly represented to the district court and to this Court that a name change would be irreversible and would moot this appeal, it is now estopped from denying that fact. We decline to dispose of this case on that ground for two reasons. First, we have not previously put parties and their counsel on notice of such a doctrine, at least not in the context of mootness questions. We do so now. All future parties and their counsel are on notice that if they make factual representations in the district court or in this Court that denial of a stay will moot the appeal, they may be es-topped from arguing after the stay is denied that the appeal is not moot.[2] The second reason that we will not hold that SunAmerica is equitably estopped from denying that the name change is irreversible and the case is moot is that the district court expressly found to the contrary. In denying the motion for stay pending appeal, the district court rejected SunAmeriea’s representations and found as a fact that a name change would not be irreversible. In other words, the district court was not fooled. The outcome of the estoppel analysis could well be different in a future case where there is no express factfinding contrary to the representation in question.
B. TRADITIONAL MOOTNESS ANALYSIS
Having decided not to bar SunAmerica’s present position on the mootness issue, we must now decide, using traditional doctrine, whether the case became moot when SunAmerica complied with the district court’s injunction by changing the name of Sun Life Insurance Company of America. We conclude that it did not, because this Court could grant meaningful relief to Sun-America if it were to prevail on this appeal.
*1333 Regardless of whether it is, in fact, “commercially impossible” for SunAmerica formally to reverse the name change process, relief from the district court’s injunction would permit other commercial utilization of the SUN LIFE mark, such as using the mark in connection with a subsidiary created to market insurance products that the marketplace already associates with the Sun Life of America name. In other words, we think that SunAmerica’s latest factual representations are true; its earlier ones were not. A ease does not become moot simply because an appellate court is unable completely to restore the parties to the states quo ante. Church of Scientology v. United States, 506 U.S. 9, 12-14, 113 S.Ct. 447, 450, 121 L.Ed.2d 313 (1992). The ability of the appellate court to “effectuate a partial remedy” is sufficient to prevent mootness. Id.; see also, e.g., United States v. Florida Azalea Specialists, 19 F.3d 620, 622 (11th Cir.1994) (holding that appeal was not moot because the appellate court “could effectuate a partial remedy”). Because potential relief remains available to SunAmerica, we hold that this case is not moot and that we have jurisdiction to decide the merits of this appeal. See, e.g., North Carolina v. Rice, 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971) (holding that federal courts must resolve questions of mootness before assuming jurisdiction).
III. WHETHER THE INJUNCTIVE RELIEF GRANTED BY THE DISTRICT COURT WAS APPROPRIATE
A. STANDARD OF REVIEW
Determination of this appeal requires consideration of: (1) the factfindings of the district court; (2) the district court’s application of the law; and (3) the injunctive relief granted. We review the factfindings of the district court, to the extent they are properly presented on appeal, under the clearly erroneous standard. E.g., Newell v. Prudential Ins. Co., 904 F.2d 644, 649 (11th Cir.1990). The district court’s application of the law is subject to de novo review. E.g., Church v. City of Huntsville, 30 F.3d 1332, 1342 (11th Cir.1994). We review the district court’s grant of injunctive relief for abuse of discretion, e.g., Panama City Medical Diagnostic v. Williams, 13 F.3d 1541, 1545 (11th Cir.1994), meaning we must affirm unless we at least determine that the district court has made a “clear error of judgment,” United States v. Kelly, 888 F.2d 732, 745 (11th Cir.1989), or has applied an incorrect legal standard, Cheney v. Anchor Glass Container Corp., 71 F.3d 848, 849 n. 2 (11th Cir.1996).
B. FACTFINDINGS OF THE DISTRICT COURT
A review of the key factfindings of the district court provides the backdrop to the legal analysis governing this case. Among the key ones are findings that:
(1) Sun Life of Canada is the senior user of the SUN LIFE mark.
(2) The likelihood of confusion among the SUN LIFE marks used by Sun Life of Canada and SunAmerica is “powerful” and “substantial.” In fact, the confusion among the marks is “inevitable.”
(3) The present confusion is not the result of Sun Life of Canada’s actions.
(4) Neither the use of geographic modifiers nor the subdivision of channels of distribution is sufficient to remedy the present confusion.
In its brief to this Court, SunAmerica states that the issues it raises on appeal are questions of law subject to de novo review. SunAmerica has not explicitly argued in the briefs or at oral argument that any of the district court’s factfindings are clearly erroneous. With one possible exception, SunAmerica does not even implicitly challenge any of the district court’s findings of fact. As this Court has held repeatedly, “[a]n argument not made is waived.” Continental Technical Servs. v. Rockwell Int’l Corp., 927 F.2d 1198, 1199 (11th Cir.1991); see also, e.g., Stepak v. Addison, 20 F.3d 398, 412 (11th Cir.1994) (holding that issue not addressed on appeal is waived); Roach v. M/V Aqua Grace, 857 F.2d 1575, 1578 n. 1 (11th Cir.1988) (stating that district court’s factual determination “has not been contested on appeal, and appellant’s argument to the contrary has thus been abandoned”).
Although SunAmerica does not challenge directly any of the district court’s findings of *1334 fact, it does argue that the district court erred in failing to consider “whether the actions of Sun Life of Canada after acquiescence served to create additional confusion.” The premise of this argument is contradicted by the district court’s express finding that the “[plaintiffs have not shown that the present confusion is the result of Defendant’s actions.” That finding is not clearly erroneous. Because all of SunAmerica’s potential challenges to the district court’s factfindings are waived, without merit, or both, we turn now to a discussion of the legal issues.
C. THE LEGAL PRINCIPLES INVOLVING ACQUIESCENCE, INEVITABLE CONFUSION, AND THE REVIVAL OF CLAIMS
To establish a prima facie case in an ordinary trademark infringement suit, a claimant need only demonstrate that: (1) it enjoys enforceable rights in its mark, and (2) the alleged infringer adopted a mark that is the same or confusingly similar. E.g., Conagra, Inc. v. Singleton, 743 F.2d 1508, 1512 (11th Cir.1984). Sun Life of Canada demonstrated both of these elements to the district court, something that SunAmerica does not dispute. Because Sun Life of Canada established a prima facie case, the district court was required to analyze SunAmerica’s affirmative defenses. SunAmerica I, 24 U.S.P.Q.2d at 1509, infra pp. 1343-44 (Birch, J., concurring).
SunAmerica raised the affirmative defense of acquiescence. Acquiescence is an equitable defense that denotes active consent by a senior user to another’s use of the mark. Coach House, 934 F.2d at 1558. The defense requires proof of three elements: (1) the senior user actively represented that it would not assert a right or a claim; (2) the delay between the active representation and assertion of the right or claim was not excusable; and (3) the delay caused the defendant undue prejudice. Id. The district court considered SunAmeriea’s proof on these points and concluded that “[i]n this case, the facts show that Sun Life of Canada acquiesced to [Sun-America’s] use of the allegedly infringing marks.” Sun Life of Canada does not challenge that conclusion.
Ordinarily, an acquiescence defense estops a senior user from asserting rights against a party for the use of the mark to which the senior user consented. See SunAmerica I, 24 U.S.P.Q.2d at 1511, infra pp. 1345^46 (Birch, J., concurring); Coach House, 934 F.2d at 1564. Additionally, the existence of acquiescence creates a legal duty on the part of the senior user to respect the junior user’s mark and to avoid creating confusion with it. SunAmerica I, 24 U.S.P.Q.2d at 1511, infra pp. 1345-46 (Birch, J., concurring). Insofar as the senior user’s and junior user’s rights and duties respecting one another are concerned, acquiescence causes both users’ marks to “stand in parity.” Id. at 1512, infra p. 1347. “After acquiescence, the senior user and junior user must treat one another’s marks with equal dignity.” Id. at 1511, infra p. 1346.
However, the defense of acquiescence is not absolute. Upon a showing that “inevitable confusion”[3] arises from the continued dual use of the marks, a senior user’s claim may be revived from estoppel. Id. at 1510, infra p. 1344; Coach House, 934 F.2d at 1564; Iodent Chem. v. Dart Drug Corp., 207 U.S.P.Q. 602, 607 (T.T.A.B.1980). As we explained in Coach House, the purpose of such a revival is to vindicate the public interest in avoiding inevitable confusion in the marketplace: “Although [the senior user] has acquiesced in use of their logo by the [junior user], the public interest in preventing confusion around the marketplace is paramount to any inequity caused the [junior user]. Consequently, if there is an inevitability of confusion, [the senior user’s] law suit may be revived from estoppel.” Coach House, 934 F.2d at 1564. Here, the district court found *1335 inevitable confusion and held that the public interest required revival of Sun Life of Canada’s prior trademark rights.
As noted previously, SunAmerica does not dispute the district court’s factual finding of inevitable confusion. Instead, it advances two alternative theories to challenge the district court’s legal analysis about inevitable confusion. First, SunAmerica argues that the concept of inevitable confusion applies solely to trademark registration and has no application in the infringement suit context. This argument is squarely foreclosed by our contrary holding in Coach House, 934 F.2d at 1564. See, e.g., Davis v. Estelle, 529 F.2d 437, 441 (5th Cir.1976) (holding that “[ojne panel of this Court cannot disregard the precedent set by a prior panel”).
Second, SunAmerica argues that the district court erred by “automatically” reviving Sun Life of Canada’s claim from estoppel. As SunAmerica correctly notes, we said in Coach House that “if there is an inevitability of confusion, petitioner’s law suit may be revived from estoppel.” Coach House, 934 F.2d at 1564. SunAmerica seizes on the single word “may” to urge that a district court has considerable discretion in determining whether a senior user’s claim should be revived from estoppel after a finding of inevitable confusion, and argues that a court should engage in an intricate balancing test before deciding how to exercise that discretion. This argument illustrates the misunderstandings that can arise from a myopic focus on a single word.
We do not read Coach House to require district judges to engage in a complex balancing test to determine whether, after a showing of inevitable confusion, a senior user’s claim is revived from estoppel. As we explained elsewhere in the Coach House opinion, “In the event that petitioner ... proves the inevitability of confusion required to survive the estoppel by acquiescence in use at trial, the district court will have to address petitioner’s newest claims of service-mark infringement and unfair competition.” Id. at 1565 (emphasis added). In other words, unless an acquiescent senior user shows inevitable confusion, estoppel bars the senior user’s claims; those claims may not (meaning “cannot”) be revived. When inevitable confusion is shown, however, the senior user is no longer estopped; thus we say that the previously-estopped claims “may” now be heard, not because a discretionary test has entered the analysis, but because that which was previously disallowed is now allowed. When that happens, the district court, as we said, “will have to address” the senior user’s claims.
Moreover, SunAmerica’s proposed balancing test would add an additional layer of complexity to an analysis that is already, of necessity, complex. Accordingly, the district court did not err by reviving, upon a showing of inevitable confusion, Sun Life of Canada’s claims that were otherwise estopped by acquiescence.. The kind of balancing and exercise of discretion for which SunAmerica calls is appropriate when the district court must decide what relief to fashion after a senior user prevails on a revived claim, but not earlier in the process when the district court is deciding whether the senior user has “prove[n] the inevitability of confusion required to survive the estoppel by acquiescence.” Coach House, 934 F.2d at 1565.
D. FASHIONING EQUITABLE RELIEF FOR REVIVED CLAIMS
Once a senior user demonstrates the inevitable confusion required to revive a claim otherwise estopped by acquiescence, the district court must determine the scope and nature of relief to be granted. The senior user’s ability to make out a prima facie case will already have been established before consideration of affirmative defenses, such as acquiescence. See SunAmerica I, 24 U.S.P.Q.2d at 1509, infra pp. 1342-43 (Birch, J., concurring). Therefore, the only task remaining before the district court will be to determine the remedy best suited to meet the goals of eliminating the inevitable confusion and protecting the public interest.
Section 34(a) of the Lanham Act directs district courts to apply traditional equitable principles when fashioning injunctive relief in trademark cases: “The several courts vested *1336 with jurisdiction of civil actions arising under this Act shall have power to grant injunctions, according to the principies of equity and upon such terms as the court may deem reasonable_” 15 U.S.C.A. § 1116(a) (West Supp.1995) (emphasis added). Equitable principles require consideration of the unique circumstances of each case, with due regal’d for flexibility, practicality, and the public interest:
The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it. The qualities of mercy and practicality have made equity the instrument for nice adjustment and reconciliation between the public interest and private needs as well as between competing private claims.
Hecht Co. v. Bowles, 321 U.S. 321, 329-30, 64 S.Ct. 587, 592, 88 L.Ed. 754 (1944).
In trademark cases, the scope of the injunction to be entered depends upon the manner in which plaintiff is harmed, the possible means by which that harm can be avoided, the viability of the defenses raised, and the burden that would be imposed on defendant and the potential effect on competition between the parties.... “The law requires that courts closely tailor injunctions to the harm that they address.”
4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 30.03[1] (4th ed. 1995) (quoting ALPO Petfoods v. Ralston Purina Co., 913 F.2d 958, 972 (D.C.Cir.1990)). Therefore, we have stated that “[t]he equitable relief that is granted should be only that which is required to distinguish the two products, and no more.” B.H. Bunn Co. v. AAA Replacement Parts Co., 451 F.2d 1254, 1270 (5th Cir.1971).
Although the equitable principles reviewed above are relevant to the relief stage of any trademark case, they apply with unique force in cases involving acquiescence. In such cases, but for the presence of inevitable confusion, the competing marks would “stand in parity” and be of “equal dignity.” See SunAmerica I, 24 U.S.P.Q.2d at 1511-12, infra pp. 1345-47 (Birch, J., concurring). For this reason, acquiescence cases are distinguishable from ordinary trademark infringement actions, in which complete injunctions against the infringing party are the order of the day. See, e.g., First Fed. Sav. & Loan Ass’n v. First Fed. Sav. & Loan Ass’n, 929 F.2d 382, 384-85. (8th Cir.1991) (upholding complete injunction where substantial evidence of actual confusion was shown). In contrast, where competing marks are of equal dignity due to acquiescence, any restriction of the junior user’s previously unrestricted freedom to use its mark results in a certain degree of undeserved, albeit necessary, hardship. The law requires this hardship because “the public interest in preventing confusion around the marketplace is paramount,” Coach House, 934 F.2d at 1564, but the legitimate coexisting interests of the parties in an acquiescence case counsels for minimizing the hardship on either party to the extent possible consistent with the public interest. Therefore, the hardship of a total injunction against a junior user in an acquiescence case is permissible only if the junior user fails to demonstrate the availability of a feasible and effective alternative means of redressing the senior user’s revived claim and vindicating the public interest in eliminating marketplace confusion, without causing undue hardship to the senior user.[4]
The underpinnings of the foregoing rule of law are illuminated by a brief consideration of the basic values at stake in such a case. *1337 When inevitable confusion occurs in the marketplace due to unrestricted dual use of a trademark, the “paramount” value of the public interest demands some adjustment to the status quo; some remedy must be fashioned. The confusion must be remedied even where, as here, dual use after acquiescence causes the competing marks otherwise to stand in parity. Any adjustment to the status quo, however, will work some hardship on one or both of the parties, because the court’s imposition of a remedy will end the previously unrestricted use of the mark by both parties. Someone must suffer the remedy, and the law demands it not be the public. That leaves only the parties to shoulder the hardship necessary to end the confusion. Accordingly, the question becomes how the requisite hardship will be allocated between the parties while giving due consideration to their legitimate interests in the mark.
The court should give due consideration to the parties’ legitimate interests by considering the full range of remedial alternatives available to cure marketplace confusion and to redress the senior user’s revived claim. When feasible and effective, the court should fashion a remedy less harsh than the strong medicine of a total injunction. On occasion, however, only that strong medicine will do and a total injunction must issue against one party or the other. In that circumstance, it is to be expected that usually the injunction will issue against the junior user. That presumption is justified, if for no other reason, because the senior user had the mark first, and it was the junior user who began the mutual use that led eventually to inevitable confusion. Stated differently, a junior user assumes the risk that, even if the senior user acquiesces to the junior’s use, inevitable confusion may someday arise in the marketplace and that the only feasible and effective way to eliminate this confusion will be a complete injunction following revival of the senior user’s claim.
In determining whether a remedy less than a total injunction against the junior’s use is feasible and effective, a court should bear in mind that absent some overriding consideration, the senior user ordinarily should not be required to stomach more of the remedial medicine than the junior user. The same considerations we have discussed that support the presumption that a total injunction, where necessary, should ordinarily fall on the junior user also support a presumption that in most cases the senior user should not have to shoulder more of the remedial burden than the junior user. Neither of these presumptions are insurmountable, and we hedge by saying “ordinarily” and “in most cases,” because we cannot predict all the variables that will arise and, after all, we are in the domain of equity, which is not easily fenced.
That point leads us to a discussion of our scope of review of a district court’s decision about how to remedy inevitable confusion following from acquiescent use. As in virtually every other area of the law, we will review factfindings only for clear error. We will also review, essentially de novo, to ensure that the district court applied the correct legal principles, which we have previously discussed, to the facts. The applicable law does not, however, function like a mathematical formula. The same facts plugged into the same analytical framework will not necessarily yield the same decision. The legal principles are not that precise; there is room for judgment and for the exercise of equitable discretion.
Accordingly, where the district court has not clearly erred in finding the facts and has applied the correct legal principles, we will review its ultimate remedial decision only for abuse of discretion. The abuse of discretion standard of review is not uniform across the law. It is applied more narrowly in some areas than in others. See United States v. Cox, 995 F.2d 1041, 1043-44 (11th Cir.1993) (explaining that, although both grants and denials of new trial motions are reviewed under the abuse of discretion standard, “we have ... accorded grants of such motions less deference than denials”). What we mean here when we say that we will review the district court’s ultimate decision about how to remedy post-acquiescence inevitable confusion is that the district court will be given considerable leeway, that there will be a wide decisional range within which we will *1338 not reverse the court even if we would have reached a different decision. See Macklin v. Singletary, 24 F.3d 1307, 1311-12 (11th Cir. 1994) (discussing abuse of discretion review in terms of the district court’s range of permissible decisional choices).
E. THE REMEDY DECISION IN THIS CASE
We turn now to a review of the district court’s remedy decision in this case. After finding that Sun Life of Canada had demonstrated the inevitable confusion required to revive its claim from estoppel by acquiescence, the district court entered an order enjoining SunAmerica from any further use of any SUN LIFE mark. The district court completely enjoined SunAmerica’s use of the mark, even though SunAmerica proposed to the district court five alternatives to a complete injunction: (1) requiring both parties to use geographic modifiers in connection with their SUN LIFE marks; (2) subdividing the distribution market such that SunAmerica could use the SUN LIFE mark in the independent broker-dealer market while Sun Life of Canada could use the mark only through its career agent sales force; (3) prohibiting the use of the SUN LIFE (U.S.) mark by Sun Life of Canada; (4) requiring the parties to conduct mutual educational campaigns to differentiate the parties and their marks; and (5) imposing guidelines regarding the use and prominence of geographic modifiers and/or corporate logos in connection with the SUN LIFE marks. SunAmerica suggested that combinations of these alternatives should be considered.
The district court considered and rejected the first three alternatives. As to the first, the district court found that geographic modifiers would be insufficient to alleviate the high levels of confusion in the marketplace. As to the second, the court found that the distribution market could not be meaningfully subdivided. As to the third, the court found that Sun Life of Canada had not used the SUN LIFE (U.S.) mark since May 1992, indicating that an injunction barring use of that mark by Sun Life of Canada would not effectively eliminate marketplace confusion. None of these factfindings — -and they are factfindings — is clearly erroneous.
We are unable to determine, however, whether the district court considered SunAmerica’s other two proposed remedies before enjoining SunAmerica from all further use of the SUN LIFE mark. We are also unable to determine if the district court considered whether the use of geographic modifiers in combination with educational efforts and guidelines regarding the use and prominence of those modifiers and/or corporate logos would have been feasible and effective. The district court may have considered and rejected all of these alternatives, but we cannot tell for sure. If the court did consider and reject them — if it found as a fact that they would not end inevitable public confusion over the marks — our review of the record indicates that such a finding would not have been clearly erroneous. However, we are not prepared to say at this time that a contrary finding — such as that some combination of the alternatives would have sufficed to protect the public interest against marketplace confusion — would be clearly erroneous.
Therefore, we remand this case for the limited purpose of providing the district court an opportunity to consider whether any of SunAmerica’s proposed alternatives to a complete injunction would have sufficiently vindicated the public interest in eliminating marketplace confusion. We leave to the sound discretion of the district court the determination of whether further hearings are needed for this purpose. If the district court finds that none of the other alternatives, by themselves or in combination, would end inevitable confusion, then the district court’s complete injunction against SunAmer-ica’s use of the marks is the only feasible and effective remedy. If, on the other hand, the district court finds as a fact that some remedy or remedies other than a complete injunction would be feasible and effective, then the court should exercise its discretion, guided by the general principles we have discussed previously, to choose among all of the available remedies.
We REMAND this case to the district court for proceedings consistent with this opinion. We leave the permanent injunction *1339 in place for the district court to revisit if the results of the proceedings it conducts consistent with this opinion indicate that it should.
Because of the nature and complexity of the issues in this case, our familiarity with them, and the nature of the remand, this panel will exercise jurisdiction over a future appeal, should there be one.
APPENDIX
IN THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT
No. 91-8860
D.C. Docket No. l:89-ev-1315-JTC
SunAmerica Corporation, a Delaware Corporation, f/n/a Sun Life Group of America; Sun Life Insurance Company of America, a Maryland corporation, Plaintiffs, Counterclaim-Defendants, Appellees, versus Sun Life Assurance Company of Canada, a Canadian corporation; Sun Life Assurance Company of Canada (U.S.), a Delaware corporation, Defendants, Counterclaim-Plaintiffs, Appellants.
Appeal from the United States District Court for the Northern District of Georgia
(September 9, 1992)
Before BIRCH, Circuit Judge, HILL and ESCHBACH *, Senior Circuit Judges.
PER CURIAM:
This case involves important trademark issues that are factually and legally complex. Plaintiffs SunAmerica Corporation and its wholly-owned subsidiary, Sun Life Insurance Company of America (“Sun Life of America”) (collectively, “SunAmerica”), brought suit against defendants Sun Life Assurance Company of Canada and its subsidiary, Sun Life Assurance Company of Canada (U.S.) (“Sun Life of Canada (U.S.)”) (collectively, “Sun Life of Canada”). SunAmerica uses the mark SUN LIFE OF AMERICA; Sun Life of Canada uses the mark SUN LIFE OF CANADA. In essence, each party has now charged the other with employing confusingly similar marks to designate its insurance products, in violation of the trademark laws.
In the district court, both sides moved for summary judgment on various claims and legal theories. The district court correctly discerned that disputed issues of material fact precluded summary judgment on the vast majority of these claims. However, the court concluded that one claim could be resolved on summary judgment — Sun Life of Canada’s use of the abbreviated mark SUN LIFE (U.S.) to designate products affiliated with its American subsidiary. The district court found the SUN LIFE (U.S.) mark to be confusingly similar to SunAmerica’s use of SUN LIFE OF AMERICA. Accordingly, the court permanently enjoined Sun Life of Canada from using SUN LIFE (U.S.) without some form of the geographical modifier “of Canada.” The propriety of this injunc-tive relief is all that is before us on this appeal.
We hold that the issuance of the permanent injunction at this stage of this case was improper. This is a complicated trademark dispute, rife with subtle and pivotal interrelationships. The district court’s resolution of one trademark claim in this unique case, without careful and proper regard for these interrelationships, was error. In particular, the trial court failed to explicitly delineate and resolve the issues raised by Sun Life of Canada’s counterclaim. In that counterclaim, Sun Life of Canada alleges that Sun-America is not entitled to receive protection for any “Sun Life” mark because SunAmeri-ca is the junior user of a “Sun Life” mark. In other words, Sun Life of Canada claims that its use of SUN LIFE (U.S.) cannot be enjoined in order to avoid confusion with SUN LIFE OF AMERICA because SunAm-erica has no enforceable rights in the mark SUN LIFE OF AMERICA. We agree with *1340 Sun Life of Canada that the resolution of this issue was a prerequisite to determining SunAmerica’s entitlement to a permanent injunction. In failing to rule explicitly on all aspects of this subject, the trial court’s summary judgment injunction was premature.
Therefore, we VACATE the permanent injunction entered by the district court and REMAND the case to the district court for further proceedings.

. The district court also enjoined SunAmerica from further use of SUN FINANCIAL SERVICES, but SunAmerica does not appeal that aspect of the injunction.

. SunAmerica argued to this Court that if we were to hold that this case is moot, we would be under a duty to vacate the judgment and injunctive orders of the district court under the principles of United States v. Munsingwear, Inc., 340 U.S. 36, 39, 71 S.Ct. 104, 106, 95 L.Ed. 36 (1950) (noting the "established practice” of vacating judgments in moot cases). Because we decline to dismiss SunAmcrica’s appeal as moot on equitable principles, it is unnecessary for us to resolve definitively this question. We do note, however, that vacatur is an equitable remedy. E.g., U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership, - U.S.-,-, 115 S.Ct. 386, 390-92, 130 L.Ed.2d 233 (1994). Were we to enforce an equitable doctrine of mootness by estoppel, we would apply equitable principles in determining whether to vacate the district court’s judgment in order to ”dispose[] of the moot case[] in the manner 'most consonant to justice.’” Id. at -, 115 S.Ct. at 391 (quoting United States v. Hamburg-Amerikanische Packetfahrt-Actien Gesellschaft, 239 U.S. 466, 477, 36 S.Ct. 212, 216, 60 L.Ed. 387 (1916) (quoting South Spring Hill Gold Mining Co. v. Amador Medean Gold Mining Co., 145 U.S. 300, 302, 12 S.Ct. 921, 921, 36 L.Ed. 712 (1892))). We could hardly be expected to grant the equitable remedy of vacatur where doing so would have the inequitable effect of rewarding a party for making inconsistent representations to this Court.

. Due to the fact-intensive nature of the inquiry, "inevitable confusion” docs not lend itself to a formulaic, mechanical definition. For present purposes, it is sufficient to note that "the standard of confusion required for a finding of inevitability of confusion is an increment higher than that required for a finding of a likelihood of confusion.” Coach House Restaurant v. Coach and Six Restaurants, 934 F.2d 1551, 1564 (11th Cir.1991).

. As an additional factor in fashioning equitable relief while avoiding unnecessary hardship to the junior user, the district court should consider the history leading to the inevitable confusion that revives the senior user’s claims. Specifically, it should consider whether the senior user comes to the court with "unclean hands” wrongfully seeking to appropriate the goodwill of the junior user's mark. The district court should not enter injunctive relief that rewards a senior user that has intentionally created inevitable confusion in order to revive its claim from estoppel, after acquiescing in a competitor's use of a mark while that competitor establishes goodwill in the mark. SunAmerica argues that this case presents us with just such a scenario, but the district court found as a fact that Sun Life of Canada did not cause the present confusion. Should this hypothetical materialize in a future case, we are confident that district courts will be able to fashion injunctive relief that avoids the unjust enrichment of a predatory senior user.