**CREATIVE COMPUTER VISIONS, INC.;**
**d/b/a CCV Software, a West Virginia**
**corporation, Plaintiff,**

**v.**

**LASER LEARNING TECHNOLOGIES,**
**INC., a Washington corporation,**
**Defendant.**

**Civil Action No. 2:95–0561.**

United States District Court,
S.D. West Virginia,
Charleston Division.

July 17, 1996.

Spencer D. Conard, Gerard R. Stowers, Michael J. Schessler, Bowles, Rice, McDavid, Graff & Love, Charleston, WV, Beverly A. Reid, Beverly A. Reid Limited, Chicago, IL, B. Karleton Kesner, Mark A. Bramble, Kesner, Kesner & Bramble, Charleston, WV, for Plaintiff.

Daniel P. McDyer, Anstandig, Levicoff, McDyer, Burdette & Yurcon, Pittsburgh, PA, for Defendant.

1. Also pending is LLT's motion for contempt. The Court stays consideration of this motion until trial.

2. One sub-issue connected to the larger question of priority of use deserves some discussion. CCV asserts it obtained the Laser Learning mark from its predecessor-in-interest, Hoffman Educational Systems, as part of the product line described in an Asset Purchase Agreement executed by CCV and Hoffman on July 25, 1993. The basis for the transfer includes the following underscored language in the Agreement:

> On the Closing Date, Seller will assign and transfer to Purchaser, without additional charge hereunder, *all of Seller's right, title and interest in all inventory, manuals and associated material relating to the enumerated discs and programs set forth in (a) and (b)* above, and as well all packing material, print material, origi-

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending are the following motions: (1) Defendant Laser Learning Technologies, Incorporated's (LLT's) motion for summary judgment on the complaint; (2) Plaintiff and Counter Defendant Creative Computer Visions, Incorporated's (CCV's) motion for summary judgment on the complaint; and (3) CCV's motion for summary judgment on the counterclaim.[1] After carefully reviewing the parties' submissions, the Court concludes genuine issues of material fact remain extant. Accordingly, all motions for summary judgment are **DENIED.**[2]

As aptly noted by LLT, "[t]he issue of . . . acquiescence with laches leading to estoppel has loomed large" from the inception of this litigation. Def.'s Reply at 1. The parties have devoted a substantial amount of briefing to this issue. To facilitate proof at trial, the Court will attempt provide guidance on the applicability of these two affirmative defenses.

## I. DISCUSSION

■ To prevail on the trademark infringement claims alleged, each litigant must prove that (1) it has a valid and protectible trademark; and (2) the opposing litigant's use of a colorable imitation of the mark is likely to cause confusion among consumers. *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.,* 43 F.3d 922, 930 (4th

nals and master tapes of the same. Further, Purchaser shall receive a complete customer listing with addresses and a dealer list with addresses.

Def.'s Br. in Supp. of Summ.Jgt.Ex. 6 at 6, 3 (emphasis added). Hoffman's president, Roger Sullivan, concurs with CCV that the Agreement transferred the mark, goodwill and remaining intellectual property rights attached to the Laser Learning products sold to CCV. *See* Aff. of Roger R. Sullivan ¶ 8 (stating Hoffman conveyed "its LASER LEARNING ™ products line, and all of the intellectual property rights, including the trademark LASER LEARNING ™ and the underlying copyrights in the LASER LEARNING ™ Laserdisc Lessons, and the goodwill associated with those intellectual property rights"). Sullivan's admission is quite significant for determining whether the rights to the mark were effectively transferred. *See Brittingham v. Jenkins,* 914 F.2d 447, 451 (4th Cir.1990).

Cir.1995). The affirmative defenses of estoppel by laches (laches) and estoppel by acquiescence (acquiescence), however, are available to a defendant or counter-defendant in an infringement action under some circumstances. *See, e.g., Sara Lee Corp. v. Kayser–Roth Corp.,* 81 F.3d 455, 461, 462 (4th Cir. 1996).

■ Laches "depends upon the facts and circumstances of each case" and the factfinder must consider three elements: (1) whether the owner of the mark knew of the infringing use; (2) whether the owner's delay in challenging the infringement of the mark was inexcusable or unreasonable; and (3) whether the infringing user was unduly prejudiced by the owner's delay. *Brittingham v. Jenkins,* 914 F.2d 447, 456 (4th Cir.1990); *Sara Lee,* 81 F.3d at 461 n. 7; *see also* 4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 31.01 (3d ed. 1996) (stating "Since the equitable defenses of laches requires a balancing of the equities of the parties and the public, it usually requires a full trial on the merits, not disposition on summary judgment.").

■ Acquiescence occurs "where the owner of the trademark, by ... affirmative word or deed, expressly or impliedly consents to the infringement." *Sara Lee,* 81 F.3d at 462; *Sweetheart Plastics, Inc. v. Detroit Forming, Inc.,* 743 F.2d 1039, 1046 (4th Cir.1984). These two affirmative defenses are similar but distinct. In a nutshell, "acquiescence implies active consent, while laches implies a merely passive consent." *Sara Lee,* 81 F.3d at 462.

While circuit precedent concerning the availability of these defenses was previously murky, *Sara Lee,* which was not cited by the parties, clarifies substantially. Further, a recent decision by the Court of Appeals for the Eleventh Circuit helpfully explicates the order of proof at trial.

In *Sara Lee,* the court commented on the relative availability of the laches and acquiescence defenses in an infringement case. The court's observations are worth quoting at length:

[Laches] is sparingly applied where, as here, a plaintiff seeks only equitable relief. *See id.* at § 31.03[3][b] (reviewing cases); *see also Skippy, Inc. v. CPC Int'l, Inc.,* 674 F.2d 209, 212 (4th Cir.) ("While the availability of laches as a defense to claims for injunctive relief may be limited ... laches will bar a claim for damages for bad faith infringement.") (citations omitted), *cert. denied,* 459 U.S. 969, 103 S.Ct. 298, 74 L.Ed.2d 280 (1982). Moreover, in consideration of the public interest, estoppel by laches may not be invoked to deny injunctive relief if it is *apparent* that the infringing use is likely to cause confusion. 4 McCarthy at § 31.04[1]; *see University of Pittsburgh v. Champion Products, Inc.,* 686 F.2d 1040, 1044 (3d Cir.)("Because laches is an equitable doctrine, its application is inextricably bound up with the nature and quality of the plaintiff's claim on the merits relevant to a prospective injunction."), *cert. denied,* 459 U.S. 1087, 103 S.Ct. 571, 74 L.Ed.2d 933 (1982).

. . . .

Moreover, even if Kayser–Roth's estoppel-by-acquiescence defense were valid [on the merits], public policy dictates that—like the doctrine of estoppel by laches—it not be rigidly applied in cases like this one, where the likelihood of confusion is *apparent. See* Section III–A, *supra;* 4 McCarthy § 31.14[1] ("The defense of laches is trumped by a *strong showing* of likely confusion of the public. Similarly, a *strong showing* of a likelihood of confusion can trump even a proven case of acquiescence by the senior user to the junior user's usage....").

*Sara Lee,* 81 F.3d at 461, 463 (emphasis added) (footnote omitted).

■ The rule emanating from *Sara Lee* is clear: while laches and acquiescence are available in an infringement context to bar a claim for damages, the defenses cannot bar permanent injunctive relief where there is a "strong" or manifest showing of likelihood of confusion.[3] Given the Court's conclusion that genuine issues of material fact remain

---

**3.** The reason for this limitation emanates from the "right of the public in being protected against the continuing use of clearly confusing marks." 4 McCarthy, *supra* § 31.04[1].

on the elements of the parties' claims, of which one is likelihood of confusion, summary judgment is inappropriate on the laches and acquiescence defenses.[4] A cursory reading of *Sara Lee* and related cases facially presents a conundrum: If a likelihood of confusion bars the affirmative defenses of laches and acquiescence, how could those defenses *ever* be asserted to bar injunctive relief given likelihood of confusion is an element of the infringement claims? In other words, would not a finding of infringement necessarily include a finding of likelihood of confusion and thus act as a bar to the assertion of laches and acquiescence *ab initio*?

A close reading of *Sara Lee* discloses otherwise. As noted above, there must be a heightened or "strong" showing of likelihood of confusion to bar the affirmative defenses and/or revive the infringement claims and potential for injunctive relief. *Sara Lee* indirectly notes this heightened requirement but goes no further. It thus provides little practical guidance to (1) a judge faced with crafting comprehensible jury instructions; and (2) attorneys attempting to construct an orderly and understandable proof scheme for trial.

Fortunately, *SunAmerica Corp. v. Sun Life Assurance Co.,* 77 F.3d 1325 (11th Cir. 1996), *petition for cert. filed,* 65 U.S.L.W. 3001 (U.S. June 17, 1996) (No. 95–2032), picks up where *Sara Lee* left off. *SunAmerica* provides in pertinent part as follows:

Ordinarily, an acquiescence defense estops a senior user from asserting rights against a party for the use of the mark to which the senior user consented.

. . . .

However, the defense of acquiescence is not absolute. Upon a showing that *'inevitable confusion'* arises from the continued dual use of the marks, a senior user's claim may be revived from estoppel.

*SunAmerica,* 77 F.3d at 1334 (emphasis added).[5]

This and other language from *SunAmerica* suggests a four-step logical progression to aid the fact-finder in resolving these issues. First, a plaintiff presents evidence on its infringement claims. Second, assuming plaintiff has presented a prima facie case and thus demonstrated a likelihood of confusion, defendant next comes forward with proof of laches and acquiescence. Assuming either is proven, plaintiff's damage claims would be barred. Third, to then determine the propriety of injunctive relief, the Court, perhaps with the jury's aid through the use of special interrogatories, must determine further whether plaintiff has demonstrated that use of the two similar marks will result in "inevitable confusion." Finally, because there is practical difficulty in raising the proof ante from "likely" to "inevitable" confusion, the Court holds plaintiff should be put to the proof burden of supplying clear and convincing evidence of inevitable confusion.[6]

4. As noted by the parties, there is an additional factual question of whether either of the parties or both of them "actively encouraged" the other to engage in the infringing conduct. Resolution of this question may also influence the propriety of injunctive relief.

Sara Lee obliquely suggests active encouragement of infringing conduct, such as prior business dealings between the parties that result in a plaintiff impliedly consenting to a defendant's infringement, constitutes an aggravating factor justifying denial of injunctive relief. *Sara Lee,* 81 F.3d at 461 n. 8 (relying, *inter alia,* on *Ambrosia Chocolate Co. v. Ambrosia Cake Bakery, Inc.,* 165 F.2d 693 (4th Cir.1947), *cert. denied,* 333 U.S. 882, 68 S.Ct. 914, 92 L.Ed. 1157 (1948)). It is important to note, however, unlike the instant case, that there was "not a scintilla of evidence" of actual confusion in *Ambrosia. Ambrosia,* 165 F.2d at 696.

5. The Court concludes the *SunAmerica* analysis applies with equal force to both laches and acquiescence.

6. *SunAmerica* explained inevitable confusion as follows:

Due to the fact-intensive nature of the inquiry, 'inevitable confusion' does not lend itself to a formulaic, mechanical definition. For present purposes, it is sufficient to note that 'the standard of confusion required for a finding of inevitability of confusion *is an increment higher* than that required for a finding of a likelihood of confusion.' *Coach House Restaurant v. Coach and Six Restaurants,* 934 F.2d 1551, 1564 (11th Cir.1991).

*SunAmerica,* 77 F.3d at 1334 n. 3 (emphasis added). Requiring a showing of inevitable confusion, *i.e.,* a showing "an increment higher" than mere likelihood of confusion, to circumnavigate the bar of laches or acquiescence is entirely consistent with *Sara Lee. See supra* at 458; *see*

## II. CONCLUSION

Based on the foregoing, the Court concludes the affirmative defenses alleged are not barred as a matter of law at this juncture. The Court further concludes genuine issues of material fact remain extant as to the affirmative defenses and the parties' respective claims. Accordingly, the motions for summary judgment are **DENIED**.

also *Sara Lee,* 81 F.3d at 461, 462 (stating as follows: (1) "estoppel by laches may not be invoked to deny injunctive relief if it is *apparent* that the infringing use is likely to cause confusion[;]" (2) "public policy dictates that [acquiescence] . . . not be rigidly applied in cases like this one, where the likelihood of confusion is *apparent;*" and (3) citing with approval respected secondary authority stating laches and acquiescence are no bar where there is a " 'strong showing' " of likelihood of confusion) (quoted authority omitted).