**RESORTS OF PINEHURST, INCORPORATED, a North Carolina corporation, Plaintiff–Appellee,**

v.

**PINEHURST NATIONAL CORPORATION, a North Carolina corporation; Pinehurst National Development Corporation, a North Carolina corporation; Pinehurst National Golf Club, Incorporated, a North Carolina corporation; U.S. Golf Pinehurst Plantation Limited, a Florida limited partnership, Defendants–Appellants,**

**and**

**Pinehurst Plantation, Incorporated, a North Carolina corporation, Defendant.**

plies with equal force to claims for employment discrimination under Title VII.

RESORTS OF PINEHURST, INCORPO-
RATED, a North Carolina corpora-
tion, Plaintiff–Appellant,

v.

PINEHURST NATIONAL CORPORA-
TION, a North Carolina corporation;
Pinehurst National Development Corpo-
ration, a North Carolina corporation;
Pinehurst National Golf Club, Incorpo-
rated, a North Carolina corporation;
U.S. Golf Pinehurst Plantation Limited,
a Florida limited partnership, Defen-
dants–Appellees,

and

Pinehurst Plantation, Incorporated,
a North Carolina corporation,
Defendant.

RESORTS OF PINEHURST, INCORPO-
RATED, a North Carolina corpora-
tion, Plaintiff–Appellee,

v.

PINEHURST NATIONAL CORPORA-
TION, a North Carolina corporation;
Pinehurst National Development Corpo-
ration, a North Carolina corporation;
Pinehurst National Golf Club, Incorpo-
rated, a North Carolina corporation;
U.S. Golf Pinehurst Plantation Limited,
a Florida limited partnership, Defen-
dants–Appellants,

and

Pinehurst Plantation, Incorporated,
a North Carolina corporation,
Defendant.

Nos. 97–1915, 97–1955 and 97–2195.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 3, 1997.

Decided July 15, 1998.

**ARGUED:** W. Thad Adams, III, Adams Law Firm, P.A., Charlotte, North Carolina; Rodrick John Enns, Kilpatrick & Stockton, L.L.P., Winston–Salem, North Carolina, for Appellants. James Donald Cowan, Jr., Smith, Helms, Mulliss & Moore, L.L.P., Greensboro, North Carolina, for Appellee. **ON BRIEF:** John Scott Evans, Adams Law Firm, P.A., Charlotte, North Carolina; John H. Hasty, Waggoner, Hamrick, Hasty, Montieth & Kratt, P.L.L.C., Charlotte, North Carolina, for Appellant. Lyn K. Broom, Lisa Frye Garrison, Smith, Helms, Mulliss & Moore, L.L.P., Greensboro, North Carolina; Stephen M. Trattner, Lewis & Trattner, Washington, D.C., for Appellee.

Before WILKINS and MICHAEL, Circuit Judges, and BUTZNER, Senior Circuit Judge.

Affirmed in part, reversed in part, and remanded by published opinion. Senior Judge BUTZNER wrote the opinion, in which Judge WILKINS and Judge MICHAEL joined.

## OPINION

BUTZNER, Senior Circuit Judge:

In this interlocutory appeal pertaining to the Lanham Act, codified as 15 U.S.C. §§ 1051–1127 (1994), we must decide whether the district court correctly held that Resorts of Pinehurst (Resorts) has valid service marks in the name PINEHURST. We must also decide whether Pinehurst National Development Corporation, Pinehurst National Corporation, and Pinehurst National Golf Club, Inc. (collectively National) and U.S. Golf Pinehurst Plantation, Ltd. (Plantation) have infringed Resorts' service marks. In an

action brought by Resorts, the district court (Judge Beaty) granted summary judgment in favor of Resorts on the validity of its marks, its infringement claim, and on National's and Plantation's defenses of fraudulent procurement and fair use. It concluded that there were genuine issues of material fact pertaining to the defenses of laches and acquiescence, and it denied Resorts' prayer for immediate, injunctive relief. In its cross-appeal Resorts seeks summary judgment on the issues of laches and acquiescence as well as an immediate, complete injunction.

We affirm the district court's judgment that Resorts' service mark, PINEHURST, is valid and that National and Plantation have infringed the mark. We reverse the district court's denial of injunctive relief and remand the case for further proceedings, including an evidentiary hearing on the defenses of laches and acquiescence, and decision of Resorts' claim for damages.

### I

In the 1890s, James Walker Tufts acquired nearly 6,000 acres of land in an unincorporated area of Moore County, North Carolina. He developed a golf resort and neighboring village community. The area was called Tuftstown until 1895 when Tufts changed the name to Pinehurst. In 1903, Tufts opened the first of several golf courses. Four years later, he commissioned the noted golf course architect, Donald Ross, to design Pinehurst No. 2, which soon became internationally famous. The Tufts family held the resort until 1970 when it sold its interest to Diamondhead Corporation. Resorts purchased Diamondhead's interest in 1984. Resorts registered federal service marks for PINEHURST with respect to resorts, golfing, and related services in 1990. *See* § 1051(a). Resorts also claims ownership of common-law service marks in PINEHURST.

In 1987, National began development of a golf course area that it would call Pinehurst National Golf Club. The course opened in 1988. The company opened another course, Pinehurst Plantation, in 1993. Resorts and National negotiated about the purchase of the new courses. National ultimately sold Pinehurst Plantation to U.S. Golf Pinehurst

Plantation, Ltd., declining to sell to or become a partner with Resorts.

### II

An appellate court reviews *de novo* the grant or denial of summary judgment in accordance with the familiar provisions of Fed.R.Civ.P. 56(c). *See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.,* 43 F.3d 922, 928 (4th Cir.1995).

■ A mark shall be canceled if its registration was fraudulently obtained. *See* §§ 1064(3) and 1120. National and Plantation allege that Resorts made false statements in its application for registration of PINEHURST. To prevail, National and Plantation must prove by clear and convincing evidence that Resorts "knowingly ma[de] false, material representations of fact" and intended to deceive the Patent and Trademark Office. *See Metro Traffic Control, Inc. v. Shadow Network Inc.,* 104 F.3d 336, 340 (Fed.Cir.1997). An applicant is required to state under oath that "to the best of his knowledge and belief" no one else has the right to use the mark. § 1051(a)(1)(A). "The oath is phrased in terms of a subjective *belief,* such that it is difficult ... to prove ... fraud so long as the affiant or declarant has an honestly held, good faith belief." 5 J. Thomas McCarthy, *Trademarks and Unfair Competition* § 31:76, p. 31–116 to 117 (4th ed.1998).

National and Plantation point out that Pinehurst has been used by many entities and that a Diamondhead attorney found a Pinehurst Country Club in Denver, Colorado. Resorts introduced testimony that John Gray, its vice president who signed the application, believed that Resorts had superior rights to PINEHURST for resort and golf services going back to the Tufts' use.

In an unrelated action brought by Resorts and other golf course owners, charging that Tour 18 infringed their marks, the court held that Resorts did not commit fraud in its application for registration of PINEHURST. *Pebble Beach Co. v. Tour 18 I, Ltd.,* 942 F.Supp. 1513, 1537–38 (S.D.Tex.1996) (hereafter *Tour 18*). In the case before us, the district court also concluded that Plantation

and National had offered no evidence to show that Gray knowingly made a misrepresentation in his declaration in support of the PINEHURST registration. In agreement with both *Tour 18* and the district court's conclusion in this case, we affirm the grant of summary judgment for Resorts on the issue of fraudulent procurement.

### III

To prove trademark infringement, Resorts must first establish that it has a valid, protectible interest in PINEHURST. *See Lone Star,* 43 F.3d at 930. The parties introduced conflicting evidence concerning whether PINEHURST is geographically descriptive or inherently distinctive. Resorts points out that the Patent and Trademark Office did not require proof of secondary meaning, as it must when presented with a descriptive mark. Resorts concludes, therefore, that the Patent and Trademark Office determined that PINEHURST was inherently distinctive. *Cf. id.* at 934. National and Plantation point out that Pinehurst is the name of a village in North Carolina in which there are a number of golf courses. Finding that the evidence on this issue was in conflict, the district court noted that even if PINEHURST were geographically descriptive, Resorts could establish a protectible use if it could prove that the term had acquired secondary meaning.

."[S]econdary meaning has been established in a geographically descriptive mark where the mark no longer causes the public to associate the goods with a particular place, but to associate the goods with a particular source." *Boston Beer Co. Ltd. Partnership v. Slesar Bros. Brewing Co., Inc.,* 9 F.3d 175, 181 (1st Cir.1993). To determine whether PINEHURST had achieved secondary meaning, the district court observed that the undisputed evidence showed that PINEHURST had been used in connection with Tufts' golf courses since the turn of the century. The district court continued:

> Plaintiff and its predecessors have undertaken significant efforts to publicize these courses, which have been described as "the most famous in the world" by one profes-

sional golfer, by spending millions of dollars in their promotion. Plaintiff's advertisements declare in this vein that "There is only one Pinehurst." Plaintiff has also proffered survey evidence here indicating that "Pinehurst" is famous throughout the country for golf services and that a substantial portion of the golfing public has confused Defendants' courses with those of Plaintiff. Evidence of actual confusion is also significant in the secondary meaning inquiry. *See Lone Star Steakhouse & Saloon v. Alpha of Virginia,* 43 F.3d 922, 936 n. 16 (4th Cir.1995).

While Defendants do not offer any evidence disputing Plaintiff's showing of secondary meaning, they appear to contend that the term "Pinehurst" has become famous for golf in general as opposed to the Tufts courses in particular. While there are over forty golf courses in the Sandhills area containing the communities of Pinehurst and Southern Pines, the evidence is uncontradicted that the "Pinehurst" name has historically been attached to the Tufts courses, and Plaintiff's survey indicates that a substantial portion of the public has made the same connection. The Court therefore concludes that, even when viewing the evidence in the light most favorable to Defendants, "Pinehurst" has acquired secondary meaning in the minds of the public.

After a bench trial in an unrelated case, a district court in Texas similarly found that PINEHURST had acquired secondary meaning, noting:

> After considering the evidence, the Court finds that the mark PINEHURST has achieved secondary meaning due to Resorts' long and exclusive use of those service marks and the notoriety of the PINEHURST mark as demonstrated by the multitude of books, articles, and other media coverage given to the resort and No. 2 course. Additionally, Resorts' considerable advertising efforts and expenditure of money toward developing a reputation and goodwill for its PINEHURST mark justifies a finding of secondary meaning. Pinehurst conducts an extensive nationwide marketing campaign by placing advertise-

ments in numerous national golf publications such as *Golf* and *Golf Digest* magazines. Pinehurst has also been aggressive in seeking out major professional golf tournaments to further the national reputation of the course and resort. The No. 2 course was recently named the host course for the 1999 U.S. Open, one of only four "Grand Slam" tournaments held each year. All of these factors weigh in favor of a finding of secondary meaning.

*Tour 18,* 942 F.Supp. at 1539 (internal citation and footnote omitted).

We agree with the district court that on the question of secondary meaning there is no genuine issue of material fact and that Resorts' mark, PINEHURST, has achieved secondary meaning.

### IV

■ " 'Likelihood of confusion' is the basic test of both common-law trademark infringement and federal statutory trademark infringement." 3 McCarthy § 23:1, p. 23–6 (footnotes omitted); *see* §§ 1125(a) (common-law mark) and 1114(1) (registered mark). The likelihood of confusion is a factual issue dependent on the circumstances of each case. *See Petro Stopping Ctrs., L.P. v. James River Petroleum, Inc.,* 130 F.3d 88, 92 (4th Cir.1997). Nevertheless, summary judgment is appropriate when the material, undisputed facts disclose a likelihood of confusion. *See Lone Star,* 43 F.3d at 935. Courts generally consider seven factors to determine the likelihood of confusion, subject to the caveat that all factors may not be relevant or of equal significance. *See Pizzeria Uno Corp. v. Temple,* 747 F.2d 1522, 1527 (4th Cir.1984). The district court was guided by these factors in determining whether National's and Plantation's use of Pinehurst in their names was likely to confuse the public.

■ We note that the Patent and Trademark Office registered PINEHURST without requiring proof that the mark had acquired secondary meaning. Significant weight must be attached to this registration. *See Sara Lee Corp. v. Kayser–Roth Corp.,* 81 F.3d 455, 465 n. 12 (4th Cir.1996). The Patent and Trademark Office's registration,

however, is not conclusive. *See Petro Stopping,* 130 F.3d at 93. Nevertheless, Resorts has established that PINEHURST has acquired secondary meaning. For these reasons, Resorts' mark, PINEHURST, must be considered strong.

The district court found that the marks, services, facilities, and advertising of the parties were essentially similar, that the services offered by the parties were in the same vicinity, and that there was not a large disparity in the quality of the services the parties provided. *See Sara Lee,* 81 F.3d at 465–66.

The court recognized that there was conflicting evidence regarding National's and Plantation's intent in adopting the term Pinehurst. But, in light of other convincing evidence of the likelihood of confusion, this factor has only slight significance. *See Pizzeria Uno,* 747 F.2d at 1527.

Evidence of actual confusion is of paramount importance in this analysis. *See Lone Star,* 43 F.3d at 937. Resorts' evidence of actual confusion is substantial and largely uncontested. An employee of National declared that he answered approximately 15 calls each week from people who thought that they were calling Resorts. He stated that "[t]he confusion occurred because golfers knew Resorts of Pinehurst only as Pinehurst and our club's name began with the name Pinehurst. Several people told me that when they called information they took our number because they thought we were the owners of the Resorts' courses."

A former receptionist for National stated that she received calls from people attempting to book tee times at Resorts' courses—particularly Pinehurst No. 2.

A golf pro who worked for both National and Plantation stated that these companies were confused with Resorts by people attending PGA merchandise shows. He reported that National and Plantation both received shipments from suppliers intended for Resorts and that shipments intended for them had been sent to Resorts. He also stated that he received phone calls misdirected by the operator. Others, including the president and head golf pro of Plantation,

confirmed the frequency of misplaced calls and misdirected shipments.

Resorts' marketing expert conducted a survey that showed substantial confusion. Neither National nor Plantation commissioned a survey that disputed the conclusions of Resorts' expert, nor did they effectively challenge the methods and reliability of Resorts' survey.

The record discloses that National's and Plantation's use of Resorts' mark, PINE-HURST, in their names creates a likelihood of confusion. A commentator has observed that the best evidence of likely confusion is actual confusion. *See* 3 McCarthy § 23:13; *Lone Star,* 43 F.3d at 937.

The record clearly and convincingly establishes that National and Plantation have infringed Resorts' common-law mark, PI-NEHURST, and its registered mark, PI-NEHURST.

### V.

■ The district court found that Resorts' evidence of confusion showed that National and Plantation were not making fair use of Pinehurst. It therefore granted Resorts summary judgment on this defense. It is National's and Plantation's use of Pinehurst in their names that belies their claim of fair use. They have failed to confine their use of the word to inform the public of their location in accordance with § 1115(b)(4).

### VI

In its cross-appeal, Resorts seeks reversal of the district court's denial of its motion for summary judgment on the issues of acquiescence and laches.

Viewing the evidence in the light most favorable to National and Plantation, the district court based its denial on the ground that genuine issues of material fact precluded summary judgment. Fed.R.Civ.P. 56(c). We find no error and affirm the district court on these issues.

### VII

■ In its cross-appeal, Resorts also seeks an immediate, permanent injunction against

National's and Plantation's infringement of its mark. We review the denial of an injunction for abuse of discretion—reviewing conclusions of fact for clear error and reviewing issues of law *de novo. Lone Star,* 43 F.3d at 939. We find no error in the facts upon which the district court relied.

■ We conclude, however, that as a matter of law the district court should have granted Resorts a permanent injunction restraining National and Plantation from infringing Resorts' mark, PINEHURST. The district court deferred ruling on Resorts' prayer for an injunction in order to afford National and Plantation an opportunity to show the feasibility and efficiency of alternatives to a total injunction. In reaching this conclusion the district court relied on *Sun-America Corp. v. Sun Life Assurance Co. of Canada,* 77 F.3d 1325 (11th Cir.1996). *Sun-America* must be read in conjunction with the concurring opinion in earlier litigation which was adopted and attached as an appendix. The facts in *SunAmerica* distinguish it from the case before us. In that case acquiescence had existed for over 70 years. Under such circumstances it was equitable to consider whether alternatives existed in lieu of a complete injunction.

Resorts' strong proof of likelihood of confusion—indeed, actual confusion—trumps the defenses of laches and acquiescence. 5 McCarthy § 31:41, p. 31–77. We applied these principles in *Sara Lee* to justify a permanent injunction in the face of claims of laches and acquiescence. 81 F.3d at 463. The public interest in avoiding confusion and mistake requires that the doctrines of laches and acquiescence not be "rigidly applied" when a strong showing of a likelihood of confusion is made. *Id.*

■ Although laches and acquiescence do not bar an injunction, Resorts' claim for damages may be foreclosed if it acquiesced in National's and Plantation's use of PINE-HURST or if it was guilty of laches. *See Restatement (Third) of Unfair Competition* § 31 cmt.d (1993); 5 McCarthy § 31:4.

## VIII

We remand the case for further proceedings including resolution of the issue of damages. The district court is directed to enjoin immediately and permanently, in conformity with Fed.R.Civ.P. 65(d), National and Plantation from infringing Resorts' mark, PINEHURST. In accordance with § 1115(4), the district court's decree may contain a proviso allowing National and Plantation to continue using Pinehurst in their respective mailing addresses as long as they maintain addresses in Pinehurst, North Carolina.

In all other respects, we affirm the district court.

*AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.*